IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAJAN DURHAM, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 17-5152 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, COUNTY OF | : | |
| BUCKS, COUNTY OF MONTGOMERY, | : | |
| PHILADELPHIA COUNTY DISTRICT | : | |
| ATTORNEY'S OFFICE, MONTGOMERY | : | |
| COUNTY DISTRICT ATTORNEY'S | : | |
| OFFICE, BUCKS COUNTY DISTRICT | : | |
| ATTORNEY'S OFFICE, PA STATE | : | |
| TROOPER DEPARTMENT, PA STATE | : | |
| TROOPER JEFFERY HAND, PA STATE | : | |
| TROOPER PRESTON GRAY, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                          July 16, 2019

The *pro se* plaintiff seeks damages from several defendants for a variety of purported

claims under 42 U.S.C. § 1983, primarily stemming from a May 2016 incident involving two

Pennsylvania state troopers. By the plaintiff's own admission, after the troopers discovered there

were pending arrest warrants against him during a traffic stop, he led them on a car chase from

Pennsylvania to New Jersey, where they performed the PIT maneuver to stop his car.[1] The plaintiff

alleges that after the collision, one of the troopers brandished his firearm and threatened to shoot

him if he did not comply with an order not to move his hands, which he claims amounted to

excessive force.

---

[1] The PIT, or "Pursuit Intervention Technique," maneuver is a technique a pursing vehicle may use "to appl[y] pressure to the rear of the fleeing vehicle, causing the fleeing vehicle to turn abruptly and come to a stop." *Bland v. City of Newark*, 900 F.3d 77, 84 n.5 (3d Cir. 2018).

After the troopers arrested the plaintiff, New Jersey and Pennsylvania both brought charges against him relating to the chase. At the time, there were pending charges against him in Philadelphia and Montgomery County, which he does not describe other than to provide the state criminal docket numbers. He alleges a variety of wrongdoing in connection with both the May 2016 and preexisting charges, including a double jeopardy claim against the state troopers for filing complaints against him in multiple jurisdictions, a largely unspecified due process claim, malicious prosecution claims against all three district attorney's offices, speedy trial violation claims against two of those offices, and an Interstate Agreement on Detainers claim.

The defendants filed four separate motions to dismiss, arguing that the plaintiff's claims suffer from numerous fatal procedural and substantive defects.[2] All three district attorney's office defendants argue that they are not entities liable to suit under section 1983 or are otherwise entitled to absolute immunity. The district attorney's offices, along with Montgomery County and the City of Philadelphia, also argue that any potential claims under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) fail because the plaintiff did not identify an official municipal policy, custom, or decisionmaker that caused the purported constitutional violations. The Bucks County District Attorney's Office argues that the *Monell* claims were also deficient because *Monell* does not allow *respondeat superior* liability or punitive damages. The troopers argue that any *Monell* claims fail as to them specifically, because individuals cannot be held liable under *Monell* and their state employer, Pennsylvania, has immunity for *Monell* claims under the Eleventh Amendment. The Montgomery and Bucks County District Attorney's Offices both also argue that the plaintiff has not satisfied the favorable termination rule established in *Heck v. Humphrey*, 512

---

[2] Presumably because of the plaintiff's *pro se* status, many of the defendants made arguments relating to claims that he theoretically could have brought against them, even if he did not name them specifically in his demand for damages as to that claim. For example, the plaintiff only named Bucks County and the "Pa. State Trooper Department" in his *Monell* claim count, but all the defendants briefed why the *Monell* claims failed as to them.

U.S. 477 (1994), which is fatal both to his malicious prosecution and speedy trial claims. The Philadelphia District Attorney's Office, the City of Philadelphia, and the troopers also argue that none of the alleged facts suggest any constitutional violation. Lastly, the Philadelphia District Attorney's Office argues that the Interstate Agreement on Detainers Act (the "IAD") does not create a private right of action and, even if it did, the pled facts do not suggest that it violated the IAD, and that all the plaintiff's state law claims likewise suffer fatal defects.

The court agrees that the amended complaint fails to state a cause of action, both because several of the defendants are not proper parties and because the facts, as alleged, do not suggest wrongdoing on the part of any defendant. To the contrary, the allegations suggest that the plaintiff acted unjustifiably and recklessly, and that the state troopers acted reasonably and professionally to mitigate the danger that he posed to themselves and the public. None of the pled facts suggest that the counties or district attorney's office defendants acted improperly in seeking to hold the plaintiff accountable for those and other alleged crimes.

Moreover, dismissal with prejudice is appropriate as to all defendants because the key deficiencies in the amended complaint are incurable, and any amendment would be futile. First, the three district attorney's offices are not proper defendants under section 1983; no additional allegations could change that fact. Second, the speedy trial rights claim necessarily fails because the state criminal records reflect that one case ended in dismissal and the other ended with a guilty plea, both of which foreclose a later speedy trial suit. Moreover, a plaintiff likely cannot receive damages for a speedy trial violation anyway. Third, the state criminal records indisputably prove that no defendant violated the Pennsylvania procedural rule requiring a bench warrant hearing, which is the only allegation that could potentially support a due process cause of action. Fourth, the IAD does not create a private right of action. Fifth, the allegations against the troopers come

nowhere close to stating a claim for excessive force, and the total absence of any facts that would potentially support such a claim demonstrates that amendment would be futile. The same is true for the Equal Protection Clause claim. Sixth, as a matter of law, the Double Jeopardy Clause does not apply to charges brought by separate sovereigns. Seventh, the *Monell* claims fail because there is no surviving underlying constitutional claim, and the troopers' employer (the Commonwealth of Pennsylvania) is immune under the Eleventh Amendment. Lastly, allowing amendment would be inequitable considering the history of this case. Therefore, the court will grant the motions to dismiss and dismiss the amended complaint with prejudice.

## I.    PROCEDURAL HISTORY

The *pro se* plaintiff, Tajan Durham ("Durham"), filed an application for leave to proceed *in forma pauperis*, attaching a proposed complaint and a motion for a preliminary injunction, on November 15, 2017. Doc. No. 1. The court denied the application without prejudice on November 28, 2017, because Durham did not file a certified copy of his prisoner account statement. Doc. No. 2. Durham filed a second application for leave to proceed *in forma pauperis*, including an amended complaint and a copy of his prisoner account statement, on December 4, 2017. Doc. Nos. 3–4. In the amended complaint, Durham asserted claims against the City of Philadelphia, Bucks County, Montgomery County, the Philadelphia District Attorney's Office, the Montgomery County District Attorney's Office, the Bucks County District Attorney's Office, the "Pa. State Trooper Department," and Pennsylvania State Troopers Jeffery Hand and Preston Grey. Doc. No. 3-2. On December 5, 2017, he mailed a letter informing the court that he had submitted a copy of his "inmate trust account" before receiving the court's November 28, 2017 order denying the first application. Doc. No. 5.

Before the court ruled on the second application, Durham filed another motion for a preliminary injunction, alleging violations of his speedy trial rights. Doc. No. 6. He sent another

letter and copy of his prisoner trust account statement on December 28, 2017, requesting that the court rule on his application for leave to proceed *in forma pauperis*. Doc. Nos. 7–8. On February 28, 2018, Durham sent a letter to inform the court of a change of address and that "a waiver of summons ha[d] be[en] sent to each Defendant on February 1, 2018." Doc. No. 9 at ECF p. 1.

On March 13, 2018, the court denied the motions for preliminary injunctions and the application to proceed *in forma pauperis* as moot, in light of Durham's apparent release from prison. Doc. No. 11. Durham then filed a proper non-prisoner application to proceed *in forma pauperis*, Doc. No. 12, which the court granted via an order entered on May 23, 2018. Doc. No. 14. In the same order, the court dismissed all claims against the "Pa. State Trooper Department" with prejudice, because the Pennsylvania State Police are immune from suit under the Eleventh Amendment. *Id*. at 2 n.2. The court also directed Durham to submit completed USM-285 forms to the United States Marshals Service so that it could serve the amended complaint on the remaining defendants. *Id*. at 2. Per the court's order, the clerk of court entered the proposed amended complaint onto the docket. Doc. No. 16. The same day, Durham filed a motion requesting the court to award attorney's fees or appoint an attorney for him. Doc. No. 17.

On June 11, 2018, Durham filed a "Petition for Judgment (Expedited Judgment Request)," in which he represented that "the summons and complaint were duly served on the Defendants, Governor Tom Wolf and et al. defendants[.]" Doc. No. 18 at ECF p. 1. On June 26, 2018, the court denied the motion for attorney's fees or appointment of counsel and the petition for judgment, explaining why each of the claims appeared to lack merit. Doc. No. 19 at 2–3 n.1. The court also noted that the Durham's reference to serving Governor Wolf was misplaced, as he did not name the governor as a defendant in the amended complaint, and the purported service of the other defendants could not have been effective because he claimed to have effected service before the

court had granted *in forma pauperis* status and deemed the amended complaint to have been filed. *Id*. at 4 n.1.

Having received no updates from Durham by August 15, 2018, the court entered another order directing him to complete all necessary USM-285 forms and warning him that the court may dismiss the case for failure to comply with Rule 4 of the Federal Rules of Civil Procedure or lack of prosecution as to any defendant for whom he did not provide a proper form. Doc. No. 20 at 2. On November 5, 2018, after the Marshals Service represented to chambers that Durham had provided some, but not all, of the completed USM-285 forms, the court entered a third order directing him to complete and submit the necessary forms and again warned that failure to do so could result in dismissal as to the relevant defendants. Doc. No. 21 at 2. On January 10, 2019, Durham filed a "Temporary Restraining Order Request (Requesting Immediate Relief of Detention)." Doc. No. 22. The court denied the request less than a week later, explaining that the request was not based on any of the facts alleged in the amended complaint, and a motion for a writ of habeas corpus was the proper mechanism to seek release from custody. Doc. No. 23 at 1 n.1.

The Philadelphia County District Attorney's Office moved to dismiss the amended complaint for failure to state a claim on January 16, 2019. Doc. No. 24. The City of Philadelphia filed its motion to dismiss on January 31, 2019. Doc. No. 29. On February 4, 2019, Durham filed a "(TRO) Deem for Judgment Expeditious Request." Doc. No. 30. The court denied the request as moot the next day, explaining that the court had already denied his request for a temporary restraining order. Doc. No. 31 at 1. After receiving an extension of time to respond to the amended complaint, Troopers Gray and Hand filed a joint motion to dismiss on February 28, 2019. Doc. Nos. 26, 28, 35. Montgomery County and the Montgomery County District Attorney's Office filed

a joint motion to dismiss on April 5, 2019. Doc. No. 37. The Bucks County District Attorney's Office received an extension of time to respond to the amended complaint on February 22, 2019, Doc. No. 34, and filed its motion to dismiss on April 18, 2019. Doc. No. 40.

In May 2019, the court learned from the Marshals Service that Durham had not completed and returned a USM-285 form for Bucks County and entered an order to show cause why the court should not dismiss Bucks County from the case in light of the prior orders. Doc. No. 42. Durham filed an untimely response to the order to show cause, in which he did not address specifically whether he had prepared a USM-285 form for Bucks County and requested "an extension of 40 days to show cause and file motion in response to Motion to Dismiss." Mot. for Continuance [sic] of 'Order to Show Cause,' ("Continuance Mot."), Doc. No. 43 at ECF p. 2. The court scheduled an in-person conference to discuss the requested extension for June 28, 2019. Doc. No. 44. When Durham had not arrived twenty-five minutes after the conference was scheduled to begin, the court allowed counsel for all the defendants to leave. Durham then arrived, and court staff informed him that the court could not hear argument on any issues now that defense counsel were no longer present, and that he was free to file a written submission explaining why the court should grant the requested extension, as well as why he was late to the conference. The court waited two weeks for Durham's written submission but never received one.

## II.    FACTUAL ALLEGATIONS

Troopers Hand and Gray stopped Durham for a traffic violation near the intersection of Bleigh Street and State Road in Philadelphia on May 27, 2016 around 5:35 p.m. Am. Compl. at ECF p. 10, Doc. No. 16. Upon running Durham's license, Trooper Hand discovered that there were multiple outstanding warrants against him. *Id*. At that point, Trooper Hand ordered Durham to get out of his car. *Id*. Durham did not comply and instead fled in his car "causing a Hot Persuit [sic]." *Id*. After the chase crossed into New Jersey, Trooper Gray performed the PIT maneuver to stop

Durham's car. *Id*. Following the collision, Trooper Hand "commanded to see [Durham's] hands" and threatened multiple times to "blow his head off" if he did not comply. *Id*. Durham alleges that he "began to obey the officers" when Trooper Hand threatened, "I swear to God if you move your hands [I]'ll blow your head off." *Id*. After apprehending Durham, the troopers took him to Camden County Correctional Facility in New Jersey. *Id*. The same day, the troopers caused New Jersey authorities to bring several charges against Durham. *Id*. Approximately two weeks later, the troopers caused the Commonwealth of Pennsylvania to bring its own charges against Durham in connection with the chase. *Id*.

Durham alleges that the troopers conspired to threaten him, which caused him "severe mental anguish," including "multiple bad dreams and flash backs [sic] of the day that he looked into the barrel of Defendant Trooper Hand's firearm praying to God that he didn't die and thinking he was going to be another young African-America[n] male to be killed by police brutality." *Id*. at ECF p. 11. He claims that he was unarmed, and Trooper Hand's threats to kill him therefore amounted to excessive force.[3] *Id*. Durham further claims that the troopers subjected him to double jeopardy in violation of the Fifth Amendment by "filing (2) complaints against [him] for the same offense . . . ." *Id*. He then alleges, with no supporting facts, that both troopers "intentionally, or with deliberate indifference and callous disregard of [his] right[s], deprived [him] of his right [to] equal protection of the laws and impeded the due course of justice in violation of the Fifth and Fourteenth Amendment[s] . . . ." *Id*.

Durham asserts that the "Pa. State Trooper Department" and Bucks County employed and controlled Troopers Gray and Hand and that they "knowingly, recklessly, or with deliberate

---

[3] Durham claims that both troopers used excessive force, but he does not allege that Trooper Gray threatened him in any way. Am. Compl. at ECF p. 10; *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 431 n.7 (3d Cir. 2006) ("[T]o prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." (internal quotation marks and citation omitted)).

indifference and callous disregard [to his] right[s], failed to instruct, supervise, control and discipline on a continuing basis" the troopers. *Id*. at ECF p. 14. Specifically, Durham claims that the troopers should have been trained

> to refrain from: (1) unlawfully and maliciously apprehending a citizen who has Constitutional and Statutory rights, privil[e]ges, and immunities; (2) unlawfully and maliciously imprisoning and prosecuting a citizen who has Constitutional and Statutory rights, privileges, and immunities; (3) Using exces[s]ive force while making an arrest, whether the arrest was lawful or unlawful; (4) Conspiring to violate the rights, privileges, and immunities g[ua]ranteed to [him] by the Constitution and laws of the United States and the laws of the State of Pennsylvania; and (5) otherwise depriving [him] of his Constitutional and Statutory rights, privileges, and immunities.

*Id*. He further alleges that the "Pa. State Trooper Department" and Bucks County "directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct" of the troopers. *Id*.

In August 2016, the Philadelphia District Attorney's Office "obtained temporary custody of [Durham]" from New Jersey and incarcerated him at the Curran-Fromhold Correctional Facility. *Id*. at ECF p. 12. At the time, two criminal actions were pending against him in Philadelphia, one of which was "disposed of" during the eleven days before he was transferred back to New Jersey. *Id*. Durham alleges that in effecting this transfer, the Philadelphia District Attorney's Office and "conspiring Defendants" violated the IAD because they had not yet "dispos[ed] of the untried complaints in the State of Pennsylvania." *Id*. After completing his sentence in New Jersey, Durham was transferred to Montgomery County in Pennsylvania for resolution of the charges there. *Id*. Durham was still detained in Montgomery County at the time he filed the amended complaint. *Id*. Durham claims that the Bucks County District Attorney's Office withdrew its charges against him for double jeopardy reasons. *Id*. at ECF p. 13.

Durham also claims that the Montgomery and Philadelphia District Attorney's Offices have held him in pretrial incarceration longer than 365 days, in violation of his federal and state

speedy trial rights. *Id*. He submitted a *pro se* petition to both courts to dismiss the charges on these grounds, but the courts did not rule on the motions. *Id*. He further alleges that the Philadelphia, Montgomery, and Bucks County District Attorney's Offices all maliciously prosecuted him, in violation of his constitutional rights. *Id*. Lastly, Durham asserts a claim against all defendants (except for the Bucks County District Attorney's Office) for his loss of income and "severe mental anguish in connection with the deprivation of his Constitutional and Statutory[ ]rights g[ua]ranted by the Fifth and Fourteenth Amendments of the United States Constitution and protected by 42 U.S.C. § 1983." *Id*. at ECF p. 15.

## III.    DISCUSSION

### A.    <u>Standard of Review – Motion to Dismiss Under Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In

other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). "In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Analysis

**1. Claims Against the Philadelphia District Attorney's Office, the Montgomery County District Attorney's Office, and the Bucks County District Attorney's Office**

All of Durham's claims against the three district attorney's offices fail, because they are not entities subject to liability under section 1983. *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) ("[T]he Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability . . . ."); *Estate of Tyler ex rel. Floyd v. Grossman*, 108 F. Supp. 3d 279, 288 (E.D Pa. 2015) (relying on *Reitz* to conclude Philadelphia District Attorney's Office was not subject to suit under section 1983); *Dickerson v. Montgomery Cty. Dist. Attorney's Office*, No. Civ. A. 04-CV-4454, 2004 WL 2861869, at *2 (E.D. Pa. Dec. 10, 2004) ("A review of the relevant Pennsylvania state law reveals that there is no authority permitting Plaintiff to continue this suit against the Montgomery County District Attorney's Office."). No facts that Durham could theoretically elicit during discovery could change this result. And even if that were not the case, each of Durham's claims against these defendants would fail because of other deficiencies discussed below.[4]

---

[4] One court in this district has held that the Philadelphia District Attorney's Office (and presumably any other district attorney's office) is an entity that may be liable to suit under § 1983. *See Sourovelis v. City of Phila.*, 103 F. Supp. 3d 694 (E.D. Pa. 2015) ("[T]he Court concludes that neither [53 P.S. ]§16257 nor *Reitz* bars suit against the D.A.'s Office

### a. Malicious Prosecution

A plaintiff must establish five elements to move forward with a malicious prosecution claim:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citation omitted). There is no real dispute that the defendants initiated criminal proceedings or that Durham was deprived of his liberty in connection with those proceedings, so the court must assess whether he has adequately pled the second, third, and fourth elements for each district attorney's office defendant.

As to the second element, requiring a plaintiff to demonstrate that the criminal proceeding ended favorably to him "precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck*, 512 U.S. at 484 (alteration in original) (internal quotation marks and citation omitted). That means the plaintiff must show "that a prior criminal case [was] disposed of in a way that indicates the innocence of the accused . . . ." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (citations omitted). Regarding the third element, probable cause exists if there is a "reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 474 (3d Cir. 1973) (internal quotation marks and citations

---

under the circumstances of this case."). This court agrees with the other Eastern District decisions cited above that *Reitz* explicitly states that district attorney's offices are not proper defendants under § 1983, but regardless, Durham's claims as to those defendants here fail for the separate reasons discussed herein.

omitted). Concerning the fourth element, malice is "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, *or* its use for an extraneous improper purpose" and may be inferred from a lack of probable cause. *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993) (quotation marks and citations omitted). The court assesses each of these elements as to each district attorney's office defendant in turn.

i.     *Philadelphia District Attorney's Office*

The amended complaint alleges,

> [i]n the City of Philadelphia the Plaintiff had (2) untried complaints that were lodged as detainers, one [of] which the plaintiff was on bail case# CP-51-CR-0002545-2012 and one in which bail was revoked and a Bench Warrant was lodged to secure the Plaintiff case# CP-51-CR-0012036-2014. . . . While in the custody of Philadelphia case# CP-51-CR-0002545-2012 was disposed of and (1) detainer was removed.

Am. Compl. at ECF p. 12.

The state records indicate that Durham was found not guilty of the 2012 Philadelphia charges and the state court dismissed the 2014 Philadelphia charges.[5] Docket, *Commonwealth v. Durham*, No. CP-51-CR-2545-2012 (Phila. Ct. Com. Pl.); Docket, *Commonwealth v. Durham*, No. CP-51-CR-12036-2014 (Phila. Ct. Com. Pl.). Both acquittal and dismissal constitute favorable terminations because they "reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit," *Kossler*, 564 F.3d at 188 (emphasis omitted) (quotation marks and citation omitted), so Durham satisfies the second element of a malicious prosecution claim for

---

[5] In deciding a motion to dismiss, the court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *See Pension Benefit Guar. Corp. v. White. Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Public records "include criminal case dispositions such as convictions or mistrials." *Id.* at 1197. They also include criminal dockets. *See Donahue v. Dauphin Cty.*, Civil Action No. 1:17-cv-1084, 2017 WL 3405112, at *1, n.1 (M.D. Pa. June 27, 2017) ("This publicly available state criminal docket, available online . . ., is a public record of which the Court may take judicial notice in considering dismissal for failure to state a claim." (citations omitted)); *Pearson v. Krasley*, Civil Action No. 16-66, 2017 WL 2021061, at *1 (E.D. Pa. May 11, 2017) ("A court may also consider public records such as criminal dockets."). Thus, the court has reviewed Durham's public criminal records in deciding the instant motions.

the Philadelphia charges. However, Durham has not even attempted to plead facts that suggest a lack of probable cause or malice. Durham pled that there were "multiple outstanding warrants" against him at the time the state troopers stopped his car. He does not provide any information about the basis for those warrants, let alone assert that they lacked probable cause or were somehow the product of some unnamed authority's ill will toward him. Thus, Durham has not adequately pled a malicious prosecution claim as to the Philadelphia District Attorney's Office.

ii. *Bucks County District Attorney's Office*

Regarding the Bucks County charges stemming from the May 2016 incident, Durham alleges that the District Attorney's Office "withdrew prosecution at the preliminary hearing with the contest to proceed by Plaintiff's Attorney for violation of the U.S. Constitution Fifth Amend[m]ent which g[ua]rantees no tolerance for double jeopardy which was op[p]osed by the Pa. State Troopers listed earlier in this complaint." Am. Compl. at ECF p. 13. "[A] dismissal of charges on double jeopardy grounds is a common law favorable termination," *Smith v. Holtz*, 87 F.3d 108, 113 (3d Cir. 1996) (citation omitted), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007), so Durham has established the second element as to the Bucks County District Attorney's Office.[6] However, his own admissions make clear why he cannot establish the third and fourth elements, absence of probable cause and malicious intent. Durham admits that upon the troopers discovering the outstanding warrants against him, he fled and led them on a car chase into New Jersey. Am. Compl. at ECF p. 10. Given that admission, it is unfathomable that there was no probable cause to bring charges related to that incident. *See United States v. Baez*,

---

[6] The state records indicate that the Bucks County District Attorney's Office withdrew the charges but do not specify the reason. Docket, *Commonwealth v. Durham*, No. MJ-07101-CR-410-2016 (Bucks Ct. Com. Pl.), *available at* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-07101-CR-0000410-2016&dnh=3EhUlAFaUixsIqO4I0c%2fxw%3d%3d. For the reasons discussed below, the court is doubtful that the court dismissed the charges on double jeopardy grounds, but nonetheless acknowledges that a dismissal is generally a favorable termination.

No. CR.A. 01-529-01, 2001 WL 34355646, at *1 (E.D. Pa. Dec. 12, 2001) (holding probable cause existed where police directly witnessed criminal activity). Therefore, the malicious prosecution claim also fails as to Bucks County.

iii.    *Montgomery County District Attorney's Office*

Lastly, like the Philadelphia claims, the amended complaint suggests that the Montgomery County criminal charges against Durham have not yet been resolved. *See* Am. Compl. at ECF p. 13 ("Plaintiff has submitted a Pro Se, Petition To Dismiss to the Courts of Montgomery County and Philadelphia County . . . . As of November 1, 2017 there has been no ruling on these matters."). However, the state records reflect that after filing suit, Durham pled guilty to robbery with threat of immediate serious injury, and the other charges were *nolle prossed*. Docket, *Commonwealth v. Durham*, No. CP-46-CR-2108-2017 (Montgomery Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-46-0002108-2017&dnh=geBxbODgiHI%2bIuPRRsZSBw%3d%3d. In a case involving multiple criminal charges, only some of which were favorably terminated, the court must determine whether "the circumstances—both the offenses as stated in the statute and the underlying facts of the case—indicate that the judgment as a whole does not reflect the plaintiff's innocence . . . ." *Kossler*, 564 F.3d at 188. Neither the state records nor the amended complaint provide any information about the circumstances of the Montgomery County case, so the court cannot determine whether a favorable termination exists here. Most importantly, like with all the other claims, Durham pleads no facts about these charges, and so has not shown a lack of probable cause or malice.

b.    Speedy Trial Rights

Durham alleges that the defendants violated his speedy trial rights with respect to two actions, the 2017 Montgomery County action (for which he pled guilty to one count) and the 2014

Philadelphia action (for which the court dismissed all charges). *See* Am. Compl. at ECF p. 13 ("Plaintiff has been held in pretrial incarceration exceeding 365 days without the commencement of trial on cases CP-46-CR-0002108-2017 and CP-51-CR-00012036-2014, which violates the Plaintiff's right to a speedy trial g[ua]ranted by the U.S. Constitution Amendment Six, Pa. Constitution Article 1, § 9, and Pa. Rule[] of Criminal Procedure 600."). A plaintiff must also satisfy *Heck*'s favorable termination rule to move forward with a speedy trial violation claim. *See Alwan v. Dembe*, 603 F. App'x 68, 69 (3d Cir. 2015) (affirming holding that *Heck* barred speedy trial claim). As discussed above, Durham has not satisfied the favorable termination rule for the Montgomery County action, so he cannot assert a speedy trial violation claim as to that action. Moreover, a guilty plea waives any later speedy trial right claims. *See Washington v. Sobina*, 475 F.3d 162, 166 (3d Cir. 2007) ("[W]e agree with our sister courts that have concluded that the right to a speedy trial is non-jurisdictional, and is therefore waived by an unconditional and voluntary guilty plea." (citations omitted)).

As to the Philadelphia charges, "[a] number of courts have held that a plaintiff whose charges were dismissed or abandoned cannot assert a § 1983 challenge based on a speedy trial violation. As well, it is far from certain that damages are available for a deprivation of speedy trial rights." *Isbell v. Warren*, No. 4:13-cv-2785, 2014 WL 3868007, at *7 (M.D. Pa. Aug. 4, 2014) (internal citation omitted); *see also Young v. City of Hackensack*, 178 F. App'x 169, 170 (affirming dismissal where district court concluded that plaintiff's "Sixth Amendment right to a speedy trial did not attach because [plaintiff's] case never went to trial"). Even if that were not the case, Durham has not alleged any facts about the reasons for any delay. There is no definite point at which a state has committed a speedy trial violation; instead, courts perform a balancing test, including consideration of the "[l]ength of delay, the reason for the delay, the defendant's assertion

of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). That means a plaintiff asserting a speedy trial right violation must plead particular facts about the delay. *See Rasmussen v. Young*, Civ. No. 17-13698 (RMB), 2018 WL 3763006, at *5 (D.N.J. Aug. 8, 2018) ("Plaintiff has not alleged if or when he asserted his right to a speedy trial on the state charges nor has he described any factors that caused delay in the trial. Therefore, he fails to state a claim." (internal citation omitted)). Here, Durham has not done so and, in any event, the state records reflect that his counsel requested the many delays, and they were therefore excusable. Docket, *Commonwealth v. Durham*, No. CP-51-CR-0012036-2014 (Phila. Ct. Com. Pl.).[7]

c.    Due Process Allegations

Durham broadly alleges that the district attorney's office defendants violated his "Right to Due Process," Am. Compl. at ECF p. 13, but he does not anchor those claims in any factual allegations. *See Negrich v. Hohn*, 379 F.2d 213, 215 (3d Cir. 1967) ("The complaint is insufficient because it is broad and conclusory. Its insufficiency lies in its failure to state facts in support of its conclusions." (internal footnote omitted)). However, the court has evaluated any possible due process claim that Durham could assert with these alleged facts in light of his *pro se* status. *See United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999) (discussing "time-honored practice of construing pro se plaintiffs' pleadings liberally" (citations omitted)).

To make out a due process claim, Durham must show either that (1) the defendants' alleged conduct was "arbitrary, or conscience shocking," to establish a substantive due process claim, *see Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks and citation

---

[7] The court declines to assess Durham's state speedy trial claim because none of the federal claims survive the motions to dismiss. *ARA Servs., Inc. v. Sch. Dist. of Phila.*, 590 F. Supp. 622, 630 (E.D. Pa. 1984) "[W]here, as here, all federal claims are dismissed or otherwise no longer viable before trial, the Court should decline to exercise jurisdiction over pendent state claims unless 'extraordinary circumstances' are present." (citing *Shaffer v. Bd. of Sch. Dirs. of the Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3rd Cir. 1984); *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982)).

omitted); or (2) he had asserted an individual interest protected by the Fourteenth Amendment and "the procedures available [did not] provide[ him] with 'due process of law,'" to establish a procedural due process claim. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Durham does not specify whether he is proceeding under a substantive or a procedural due process theory, so the court considers whether either could apply.

First, Durham has not adequately pled a substantive due process claim because none of the alleged facts "shock the conscience." As discussed above, the amended complaint reflects that the troopers acted reasonably and appropriately to address the danger that Durham himself caused. Second, Durham has not identified any Fourteenth Amendment-protected interest for purposes of establishing a procedural due process claim. The Supreme Court has explicitly rejected the idea "that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 116 (2003). Thus, Durham cannot claim that his prosecution in multiple jurisdictions somehow created a procedural due process issue. A speedy trial claim falls under the Due Process Clause, *see Barker*, 407 U.S. at 515 ("[T]he right to a speedy trial is fundamental and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." (internal quotation marks and citations omitted)), but for the reasons discussed above, that claim likewise fails. In contrast, the IAD does not create a fundamental interest for procedural due process purposes at all. *See Cooney v. Fulcomer*, 886 F.2d 41, 46 n.8 (3d Cir. 1989) ("[A]ppellant's due process rights are not implicated when he asserts that the Commonwealth violated various provisions of the IAD.").

The one potential exception is Durham's claim that the Philadelphia District Attorney's Office violated Pennsylvania Rule of Criminal Procedure 150 by "detaining [him] without

conducting a Bench Warrant hearing."[8] Am. Compl. at ECF p. 13. However, even if Rule 150 creates a fundamental interest for procedural due process purposes, Durham has not provided any information from which the court could conclude that the Pennsylvania court's procedures around that Rule were constitutionally inadequate. Moreover, the facts as alleged, combined with the state records, show that Durham was not entitled to a Rule 150 hearing at all, because he was never arrested or held pursuant to that bench warrant.

Durham alleges that the state court issued the bench warrant in connection with the 2014 Philadelphia action. Am. Compl. at ECF p. 12. The state records for that action reflect that the state court granted a motion to revoke and forfeit Durham's bail on May 23, 2016. Docket, *Commonwealth v. Durham*, No. CP-51-CR-12036-2014 (Phila. Ct. Com. Pl.). A few days later, the state troopers stopped Durham for a traffic violation and discovered the outstanding warrant. Am. Compl. at ECF p. 10. However, the troopers did not have an opportunity to enforce the bench warrant, because Durham led them on a car chase that ended with his incarceration in New Jersey.[9] *Id*. When the New Jersey authorities transferred Durham to Philadelphia, the state court resolved the other Philadelphia action stemming from the 2012 charges (which included a hearing on the

---

[8] This Rule states:

> [w]hen a defendant or witness is arrested pursuant to a bench warrant, he or she shall be taken without unnecessary delay for a hearing on the bench warrant. The hearing shall be conducted by the judicial officer who issued the bench warrant, or, another judicial officer designated by the president judge or by the president judge's designee to conduct bench warrant hearings.

Pa.R.Crim.P. 150(A)(1).

[9] If an individual is arrested outside the county where the bench warrant was issued, "the authority in charge of the county jail promptly shall notify the proper authorities in the county of issuance that the individual is being held *pursuant to the bench warrant*." Pa.R.Crim.P. 150(A)(4) (emphasis added). Durham alleges that he was detained in New Jersey "for outstanding Pa. warrants." Am. Compl. at ECF p. 10. However, he asserts elsewhere in the amended complaint that he was "held for the complaint alleged by Defendants Trooper Gray and Trooper Hand for resisting arrest along with a fugitive from justice detainer from Pa." *Id*. at ECF p. 12, and New Jersey state records confirm that the New Jersey complaint was filed the day of the incident. Docket, *State v. Durham*, No. 16-08—2367-I (N.J.). Those records further reveal that the New Jersey courts did not set bail for Durham until May 31, 2016. *Id*. Thus, the public records make clear that New Jersey detained him on its own charges stemming from the chase, not the Philadelphia bench warrant, and thus Rule 150(A)(4) did not apply.

government's motion to revoke/release and forfeit bail, Docket, *Commonwealth v. Durham*, No. CP-51-CR-2545-2012 (Phila. Ct. Com. Pl.)), and he was then transferred back to New Jersey. Am. Compl. at ECF p. 12. After he completed the New Jersey sentence, the authorities transferred him to Montgomery County, where he remained at the time he filed the original and, seemingly, the amended complaint. *Id*. Therefore, considering both the facts as alleged and the state records, Philadelphia did not need to provide Durham a Rule 150 hearing, because he was never "arrested pursuant to a bench warrant." Thus, even construing the complaint as liberally as possible, Durham has not made out either a substantive or a procedural due process claim.

### d.    Interstate Agreement on Detainers

Durham next claims that the district attorney's office defendants violated the IAD by "transfer[ring his] custody back to the original State without disposing of the untried complaints in the State of Pennsylvania." Am. Compl. at ECF p. 12. But to the extent he is entitled to any relief on that claim, the proper remedy is dismissal of the charges, not monetary damages. *See Van Riper v. U.S. Marshall for the E. Dist. of Tenn.*, 815 F.2d 81, 81 (6th Cir. 1987) ("The district court held that because the IAD provides for the remedy of dismissal of the charges in case of a violation, no other remedy was implied. We also agree with this conclusion of the district court." (internal citations omitted)). The United States District Court for the District of New Jersey, in a decision that the Third Circuit affirmed in relevant part, has confirmed that the IAD does not provide a private cause of action. The District Court held, "in any event, because the IAD provides for administrative remedies in case of a violation, e.g., 18 U.S.C. Appendix III, Article 3(d) and Article 4(e), no private right of action is implied under the statute." *Jordan v. Cicchi*, Civ. A. No. 08-6088(AET), 2010 WL 848809, at *11 (Mar. 9, 2010) (citation omitted), *aff'd in relevant part by* 428 F. App'x 195 (3d Cir. 2011) (per curiam). On appeal, the Third Circuit stated "for essentially

the same reasons as those stated by the District Court in its opinions, we will affirm the District Court's disposition of the claims under the [IAD] . . . ." 428 F. App'x at 198.

### 2. Claims Against Troopers Hand and Gray

#### a. Excessive Force Allegations

Durham alleges that Trooper Hand used excessive force when he "commanded to see [his] hands before he bl[ew] his head off threatening multiple times." Am. Compl. at ECF p. 10. He further avers that after he "came to" following the trooper's use of the PIT maneuver, Trooper Hand "threatened 'I swear to God if you move your hands [I]'ll blow your head off.'" *Id*. Durham does not allege that the troopers caused him to suffer any physical injuries, but he states that he "had multiple bad dreams and flash backs [sic] of the day that he looked into the barrel of Defendant Trooper Hand's firearm praying to God that he didn't die and thinking he was going to be another young African-American[] male to be killed by police brutality." *Id*. at ECF p. 11. He claims that these "threat[s] to cause serious bodily injury or to kill" him amounted to excessive force. *Id*.[10]

Claims that an officer used excessive force in making an arrest are subject to the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). In determining whether an officer's physical coercion or threat was appropriate, the court must carefully consider the totality of the circumstances of the case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the

---

[10] Durham does not seem to allege that the use of the PIT maneuver was itself excessive force. Even if he did, Durham has not pled any facts about the "hot p[u]rsuit" that would allow the court to determine whether the PIT maneuver was inappropriate in light of the circumstances of the chase. *See Moore-Jones v. Quick*, 909 F.3d 983, 986 (8th Cir. 2018) ("Other cases show that PIT maneuvers can reasonably be used." (collecting cases)); *Bland*, 900 F.3d at 84 (describing PIT maneuver as "standard").

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). In considering whether the officer acted reasonably, the court must "allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. In this Circuit, courts also consider

> the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).

Under the circumstances at issue here, the question is whether it was objectively reasonable for Trooper Hand to brandish and threaten to use his weapon when confronting Durham after the PIT collision.

> Several cases from this and other circuits have used the *Graham* factors to determine whether an officer's act of drawing his weapon during an encounter with a citizen was justified. These cases divide into two categories: (1) cases where an officer was justified in displaying his weapon because he reasonably perceived that he was in danger, and (2) cases where the display was not warranted because there was no threat to officer safety.

*Stiegel v. Peters Twp.*, 600 F. App'x 60, 65 (3d Cir. 2014). Officers behave reasonably where the seriousness of the underlying crime or the arrestee's behavior suggests they or the community may be in danger. *See Davis v. Bishop*, 245 F. App'x 132, 133–34 (3d Cir. 2007) (holding allegations that officer "flung" plaintiff on hood of car and "forcibly cuffed and 'manhandled'" him did not establish excessive force where officer "was confronted with an 'uncertain situation' with an individual who was uncooperative and appeared to be intoxicated"); *Feldman v. Cmty. Coll. of Allegheny*, 85 F. App'x 821, 826 (3d Cir. 2004) (affirming dismissal of excessive force claims

where plaintiff resisted arrest and "actively struggle[ed]"); *Eve v. Lynch*, Civ. No. 1:11-CV-1131, 2013 WL 664620, at *4 (M.D. Pa. Feb. 22, 2013) (holding allegations that officers threw plaintiff on ground and jumped on top of him did not amount to excessive force where plaintiff was suspected of serious crimes and posed threat to officers). In contrast, courts have found that training a firearm on an individual was excessive where the officer was executing a search warrant for a nonviolent, nonserious crime; the individual was a minor; or the individual otherwise posed no threat to the officer. *See Stiegel*, 600 F. App'x at 65–66 (collecting cases).

Even accepting Durham's allegations as true, no reasonable factfinder could conclude that the troopers' use of force was excessive. By his own admission, Durham fled from the police in his vehicle, causing a "hot persuit [sic]." Am. Compl at ECF p. 10. At that point, the troopers knew both that there were multiple warrants against him and that he was willing to flee to avoid those warrants being executed. *Id*. Durham then crossed state lines into New Jersey, where the troopers used a PIT maneuver to bring the chase to an end. *Id*.

Although Durham now claims that he was unarmed, the troopers had no way to know whether this suspect—who, again, had just led them on a car chase—had a weapon. According to the amended complaint, Trooper Hand brandished his firearm at Durham and threatened to use that firearm if Durham moved his hands. *Id.* Durham neither alleges that Trooper Hand fired his weapon, nor that he trained that weapon on Durham any longer than was necessary to effect the arrest. *See Sharrar*, 128 F.3d at 822 ("[T]here is no allegation that the requirement that the suspects lie down extended beyond the time necessary to handcuff them and secure them."). There is absolutely no allegation that either trooper used any physical force on Durham, beyond what was necessary to complete his arrest. *See Olmo v. Paterson Police Dep't*, Civ. A. No. 16-9414 (JMV), 2018 WL 1806054, at *6 (D.N.J. Apr. 17, 2018) (dismissing claims against officer where plaintiff

did "not allege any facts showing that [officer] us[ed] any force, beyond the use of handcuffs, against Plaintiff"). Durham suffered no physical injuries or any harm whatsoever other than "bad dreams" and "flash backs [sic]". Am. Compl. at ECF p. 11.

There can be no argument as to whether police officers are entitled to brandish their weapons when the circumstances make it appropriate for them to do so. Indeed, that is why the state provides them weapons in the first place. *See City of Canton v. Harris*, 489 U.S. 378, 390 n.10 ("[C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task."); *see also Samoles v. Lacey Twp.*, Civ. A. No. 12-3066 (FLW), 2014 WL 2602251, at *8 (D.N.J. June 11, 2014) (holding excessive force claim failed because it was "objectively reasonable" for officers to brandish firearms); *cf. Stiegel*, 600 F. App'x at 66 ("Other cases have found excessive force where officers train their guns on *compliant* adults who pose *no threat to the safety of the police*." (emphasis added)).[11] Nothing here suggests that this was a circumstance where use of a firearm was unnecessary or inappropriate.

### b. Double Jeopardy Allegations

Durham also alleges that the troopers violated his Fifth Amendment double jeopardy rights when they "fil[ed] (2) complaints against [him] for the same offense . . . ." Am. Compl. at ECF p. 11. This appears to relate to allegations earlier in the amended complaint that the troopers "filed a complaint with the local New Jersey authorities" alleging resisting arrest/eluding, aggravated assault, reckless endangerment, and possession of a weapon and later "filed a complaint against [him] in Pennsylvania," alleging flight to avoid apprehension/trial/punishment, fleeing or

---

[11] Because the court holds that the troopers' use of force was objectively reasonable, the court need not assess whether they would be entitled to qualified immunity. *See Curley*, 499 F.3d at 207 ("[The issue of whether force was excessive] is not a question of immunity at all, but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity.").

attempting to flee/elude officer, reckless endangering, disorderly conduct hazardous/physical offense, and multiple traffic violations.[12] *Id.* at ECF p. 10.

Unfortunately, Durham fundamentally misunderstands the concept of double jeopardy. First, state troopers do not bring charges against criminal defendants (even if they report the facts underlying the charges to prosecutors), and so they are not the proper target of a double jeopardy claim. *See Brown v. Ohio*, 432 U.S. 161, 165 (1977) ("[T]he Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors."). Second, double jeopardy protections do not apply to separate offenses, so long as "each requires proof of a fact that the other does not . . . ." *Id*. at 166 (internal quotation marks and citation omitted). Thus, double jeopardy could only theoretically apply to the resisting arrest and reckless endangerment charges, which are arguably overlapping.

The court need not, however, evaluate the elements the New Jersey and Pennsylvania prosecutors would have to prove to sustain those charges, because third, and most importantly, double jeopardy does not apply to separate sovereigns. *See Puerto Rico v. Sanchez Valle*, 136 S.Ct. 1863, 1867 (2016) ("[U]nder what is known as the dual-sovereignty doctrine, a single act gives rise to distinct offenses—and thus may subject a person to successive prosecutions—if it violates the laws of separate sovereigns."). Here, New Jersey and Pennsylvania are separate sovereigns, and both are entitled to prosecute Durham for offenses he allegedly committed within their borders. *See Heath v. Alabama*, 474 U.S. 82, 93 (1985) ("To deny a State its power to enforce its criminal laws because another State has won the race to the courthouse 'would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within

---

[12] The descriptions of all charges come directly from the amended complaint.

their confines.'" (quoting *Bartkus v. People of the State of Ill.,* 359 U.S. 121, 137 (1959)). Thus, even if Durham had named a proper defendant, his double jeopardy claim would fail.

### c. Equal Protection Allegations

Durham claims that the troopers "deprived [him] of his right [to] equal protection of the laws and impeded the due course of justice in violation of the Fifth and Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983." Am. Compl. at ECF p. 11. The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff must identify a similarly situated individual whom the state treated differently to establish an equal protection claim. *See, e.g., Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (holding equal protection claim lacked merit, in part, because plaintiffs "point[ed] to no evidence that [the officers] treated similarly situated individuals differently. They d[id] not even identify other individuals who might be similarly situated" (footnote omitted)); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) ("[Plaintiff's] claim must fail because he does not allege the existence of similarly situated individuals—i.e., Borough Managers—who[m the former mayor of Kutztown] treated differently than he treated [plaintiff]." (citation omitted)).

The court presumes that Durham bases his equal protection claim on his statements that "he looked into the barrel of Defendant Trooper Hand's firearm praying to God that he didn't die and thinking he was going to be another young African-America[n] male to be killed by police brutality," Am. Compl. at ECF p. 11, and that he intends the amended complaint to be "a cry for help when it comes to malicious prosecution of young African-American males in the United States." *Id.* at ECF p. 16. What he does not allege, however, is that there were similarly situated non-African American suspects whom the police did not threaten with a firearm after a car chase.

To the contrary, there is absolutely no reference to race anywhere else in the complaint. Absent such an allegation, his equal protection claim fails.

### 3. *Monell* Claims Against the Troopers and Bucks County[13]

Durham broadly alleges,

> Acting under color of law and pursuant to official policy or customs, Defendants Pa. State Trooper Department and County of Bucks knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's right[s], failed to instruct, supervise, control and discipline on a continuing basis Defendants Pa. State Trooper Preston Gray and Pa. State Trooper Jeffery Hand in their duties to refrain from: (1) unlawfully and maliciously apprehending a citizen who has Constitutional and Statutory rights, privilages [sic], and immunities; (2) unlawfully and maliciously imprisoning and prosecuting a citizen who has Cotitutional [sic] and Statutory rights, privilages [sic], and immunities; (3) Using excesive [sic] force while making an arrest, whether the arrest was lawful or unlawful; (4) Conspiring to violate the rights, privileges, and immunities gauranteed [sic] to the Plaintiff by the Constitution and laws of the United States and the laws of the State of Pennsylvania; and (5) otherwise depriving Plaintiff of his Constitutional and Statutory rights, privileges, and immunities.

*Id*. at ECF p. 14.

Municipal liability attaches where (1) the municipality's "employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity;" (2) "the individual has policy making authority rendering his or her behavior an act of official government policy;" or (3) "an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citations omitted). Beyond the single conclusory statement that the troopers acted "pursuant to official policy or customs," Durham does not point to any formal policy or standard, nor does he identify any official or decisionmaker who played

---

[13] Durham also asserts a *Monell* claim against the "Pa. State Trooper Department." Am. Compl. at ECF p. 14. However, the court previously dismissed this defendant from the action with prejudice, because the Commonwealth of Pennsylvania is immune from all claims under the Eleventh Amendment. *See* May 23, 2018 Order at 2 n.2, Doc. No. 14 ("Durham has improperly attempted to sue the Pennsylvania State Police (misidentified as the 'Pa. State Trooper Department') under 42 U.S.C. § 1983 in federal court. More specifically, 'the Pennsylvania State Police are immune from suit under the Eleventh Amendment.'" (citations omitted)).

any role in the events underlying the amended complaint. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("Equally fatal, the four allegations in the complaint relevant to [plaintiff's] *Monell* claim fail to allege conduct by a municipal decisionmaker."); *Kane v. Chester Cty. Dept. of Children, Youth and Families*, 10 F. Supp. 3d 671, 688 (E.D. Pa. 2014) (dismissing *Monell* municipal liability claim because allegations regarding "policy, custom, or practice [we]re nothing more than 'bald assertions' which fail[ed] to state a claim upon which relief c[ould] be granted." (citation omitted)).

Instead, Durham seems to be propounding a "failure to train" theory. *See* Am. Compl. at ECF p. 14 (alleging defendants "failed to instruct, supervise, control and discipline" Troopers Hand and Gray). A "failure to train" claim requires a plaintiff to show that "the failure to train reflects a deliberate or conscious choice by" the municipality, and the failure to implement "the identified deficiency in the training program must be closely related to the ultimate injury." *Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007) (citing *City of Canton*, 489 U.S. at 389, 391).

Generally, the failure to train is "considered deliberate indifference only where the failure has caused a pattern of violations. Although it is possible to maintain a claim of failure to train without demonstrating such a pattern, the [Supreme Court has] made clear that the burden on the plaintiff in such a case is high . . . ." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 408–09 (1997) ("*Bryan Cty.*")). As the Supreme Court explained,

> in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of

the policymakers' choice—namely, a violation of a specific constitutional or statutory right.

*Bryan Cty.*, 520 U.S. at 409. Durham has not alleged a pattern of violations, and he thus faces a high bar in establishing a *Monell* "failure to train" claim.

Of course, it is foreseeable—and indeed, necessary—that officers will make arrests, and that suspects will sometimes flee to try to avoid arrest. Indeed, "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task." *City of Canton*, 489 U.S. at 390 n.10. Thus, a plaintiff could theoretically succeed on a claim that a municipality demonstrated deliberate indifference by failing to train officers on making arrests, including under circumstances where the plaintiff resists arrest or attempts to flee the scene.

However, such a claim cannot succeed here where, taking all the allegations as true, there was no underlying constitutional violation. *See Gayemen v. Sch. Dist. of City of Allentown*, 712 F. App'x 218, 221 n.3 (3d Cir. 2017) ("We agree with the District Court that [plaintiff's] *Monell* claim fails because there was no underlying constitutional violation."); *Baez v. Lancaster Cty.*, 487 F. App'x 30, 32 (3d Cir. 2012) ("Plaintiff must establish an underlying constitutional violation to attribute liability to the County pursuant to *Monell* . . . ."). Durham first claims that the state troopers "unlawfully and maliciously apprehend[ed] . . . imprison[ed] and prosecut[ed]" him. Am. Compl. at ECF p. 14. But by his own admission, the troopers knew that he "had multiple outstanding warrants." *Id.* at ECF p. 10. When they ordered him to get out of the car, presumably so that they could effectuate those warrants, Durham—again, by his own admission—"fled in his vehicle causing a Hot Persuit [sic]." *Id.* It goes without saying that Troopers Gray and Hand were well within their rights to effectuate the warrants; it would have been a dereliction of duty for them not to do so. And even if they did not have those warrants, it still would have been appropriate to

apprehend an individual who fled from them during a traffic stop, causing a chase that potentially subjected the troopers and the public to danger. *See* 75 Pa. C.S. § 3733(a) (establishing penalties for fleeing or attempting to elude police officer, including enhanced penalties for crossing state lines and endangering law enforcement or member of general public in high-speed chase).

Durham then claims that Bucks County was deliberately indifferent by failing to train the state troopers regarding the use of excessive force. Although a municipality could be held liable for not providing officers excessive force training, *City of Canton*, 489 U.S. at 390 n.10, the facts pled here make clear that the troopers' use of force was not excessive for the reasons discussed above. And to the extent Durham alleges that the troopers conspired to deprive him of his constitutional rights, there could be no such conspiracy absent an underlying constitutional violation. *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995) (holding court need not consider conspiracy claim because complaint did not adequately allege underlying constitutional violation). Lastly, Durham's claim that the troopers "otherwise depriv[ed him] of his Constitutional and Statutory rights, privileges, and immunities," Am. Compl. at ECF p. 14, is too broad and conclusory to survive *Iqbal/Twombly* and is contradicted by the pled facts. *See Argueta v. U.S. Immigration and Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011) (according "little if any weight" to "broad allegations" of wrongdoing); *Gardner v. Lanigan*, Civ. A. No. 13-7064 (BRM) (DEA), 2018 WL 4144689, at * 4 (D.N.J. Aug. 30, 2018) ("[S]uch overly broad assertions fail to satisfy the pleading standard under *Iqbal*."). Thus, Durham has not adequately pled a *Monell* claim.

Equally fatal, Durham never ensured that the complaint was properly served on Bucks County, and, as a matter of public record, Bucks County does not employ state troopers. *See Grabiak v. Pa. State Police*, 276 F. App'x 210 (3d Cir. 2008) (addressing state trooper's claims

against employer, Pennsylvania State Police).[14] The court entered two orders directing Durham to complete and return USM-285 forms for all defendants to the Marshals Service and warned that the court may dismiss any defendant for whom Durham did not return a completed form. May 24, 2019 Order at 1, Doc. No. 42 (citing earlier orders). After the Marshals Service informed chambers that Durham had not returned a USM-285 form for Bucks County,[15] the court ordered Durham to show cause why the court should not dismiss all claims against that defendant. *Id*. Durham filed an untimely response in which he did not address whether he had returned a completed USM-285 form specifically for Bucks County, and the court held a hearing to discuss the matter, to which Durham arrived so late that the court had already allowed defense counsel to leave. Court staff instructed Durham that he could file a written submission explaining his tardiness and why Bucks County should not be dismissed from the action, but he elected not to do so. Generally, the court would dismiss the claims against Bucks County without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. However, given the other fatal defects present here, the court deems dismissal with prejudice to be appropriate.

### 4. Unspecified Claims Against All Defendants Except Bucks County District Attorney's Office

The amended complaint's final count is a general claim against all defendants (except the Bucks County District Attorney's Office) for Durham's "loss of income and severe mental anguish in connection with the deprivation of his Constitutional and Statutory[ ]rights g[ua]ranted by the Fifth and Fourteenth Amendments of the United States Constitution and protected by 42 U.S.C. § 1983." Am. Compl. at ECF p. 15. Durham then explains the financial and emotional toll that being

---

[14] As noted above, the Pennsylvania State Police are immune from suit under the Eleventh Amendment. *See supra* n.13.

[15] The Marshals Service also represented that Durham had not returned a USM-285 form for Montgomery County, but Montgomery County nonetheless filed a joint motion to dismiss with the Montgomery District Attorney's Office. Doc. No. 37.

imprisoned has taken on him. *Id.* at ECF p. 16. Such broad statements do not assert a standalone claim and appear to be an undefined demand for damages more than anything else. *See Bright*, 380 F.3d at 735 (explaining that courts should ignore "footless conclusions of law" in assessing motions to dismiss (citation and internal quotation marks omitted)). Certainly, for all the reasons discussed above, these statements do not entitle Durham to any relief. And notably, this appears to be the only claim alleged against Montgomery County and the City of Philadelphia. Am. Compl. at ECF pp. 11, 13–14.

### 5.    Leave to Amend/Dismissal with Prejudice

This is Durham's second complaint and six months have passed since the first defendant filed its motion to dismiss highlighting its many flaws. Doc. No. 24. Yet Durham took no steps to attempt to remedy those deficiencies or even respond to the motions to dismiss until the court ordered him to show cause why the court should not dismiss Bucks County from the action. Doc. No. 43. When the court scheduled a conference with all the parties so that Durham could have the opportunity to explain why he should be entitled to respond to the defendants' arguments despite the significant delays, he arrived so late that the court could not hear his explanations without engaging in an inappropriate *ex parte* discussion. The court nonetheless gave him the opportunity to make a written submission, which he declined.

Generally, district courts must allow a *pro se* plaintiff an opportunity to amend "unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (citation omitted). Here, amendment would be both inequitable and futile. The defendants have already expended time and money in filing the motions to dismiss and traveling to attend the conference, which the court ultimately had to cancel because Durham failed to arrive on time or notify chambers that he would be late. Even before the

scheduled conference, this case was significantly delayed, first by Durham's repeated failures to effect service on the defendants by completing USM-285 forms and then by Durham ignoring the motions to dismiss for months before asking for a full 40 days to respond. Moreover, based on the facts as Durham pled them, his claims are so frivolous as to make any potential amendment futile. Thus, this is one of those cases where dismissal with prejudice is appropriate.[16]

## IV.    CONCLUSION

Durham led the state troopers on what he himself described as a "hot pursuit," and in so doing subjected the troopers, himself, and the wider community to danger. The Constitution does not grant anyone the right to engage in illegal, dangerous conduct, and the troopers were well within their rights to take appropriate steps to minimize the danger that Durham posed. Indeed, their positions obligated them to do so. The Constitution does not grant Durham the right to ignore multiple warrants. Nor does it grant him the right to initiate a car chase when officers of the law sought to enforce those warrants. Likewise, the jurisdictions where Durham allegedly committed his crimes have the right to bring him to justice, and the alleged facts come nowhere close to suggesting they did so in an unconstitutional manner. Ultimately, the amended complaint reflects an individual who made a conscious choice to disregard valid orders from state courts and law enforcement—and in so doing presented grave risk to the public—and is now attempting to profit from that choice. The court will not allow him to do so.

---

[16] As discussed above, generally, the court would dismiss the claims against a defendant whom the plaintiff had failed to timely serve without prejudice pursuant to Federal Rule of Civil Procedure 4 or for failure to prosecute. Nov. 5, 2018 Order at 2, Doc. No. 21. However, the court deems it proper to dismiss the claims against Bucks County with prejudice, because the asserted causes of action against the County are frivolous and fail to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) (permitting court to dismiss case after granting *in forma pauperis* status if court determines action is frivolous, malicious, or fails to state claim on which relief may be granted).

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.